OPINION
{¶ 1} Defendant-appellant, Patrick C. Kirigiti ("appellant"), appeals from a judgment of the Franklin County Court of Common Pleas convicting him of one count of child endangering, a third-degree felony. For the reasons that follow, we affirm the trial court's judgment. *Page 2 
 {¶ 2} By indictment filed September 9, 2005, appellant was charged with one count of second-degree child endangering and one count of third-degree child endangering resulting from injuries suffered by appellant's grandson. Appellant initially entered not guilty pleas to the charges and the case was set for a jury trial. On March 21, 2006, the day the jury trial was to begin, appellant, pursuant to a negotiated plea agreement, withdrew his former plea of not guilty, and entered a guilty plea to one count of third-degree child endangering in violation of R.C. 2919.22. In exchange for the plea, the state of Ohio requested the trial court enter a nolle prosequi on the remaining count in the indictment. The trial court held a plea hearing, at the beginning of which the trial court stated that the plea was being entered as a plea under N. Carolina v. Alford (1970), 400 U.S. 25, 91 S.Ct. 160,27 L.Ed.2d 162.[1] The court informed appellant that the entry of the plea as an Alford plea would not affect the finding of guilty or the sentence imposed, addressed the provisions required under Crim.R.11, and accepted appellant's plea, with sentence to be imposed after a presentence investigation.
 {¶ 3} Prior to sentencing, appellant sought to withdraw his guilty plea pursuant to Crim.R. 32.1. The trial court held an evidentiary hearing on defendant's motion, following which the trial court denied the motion. The trial court proceeded immediately to sentencing and imposed a four-year prison sentence. *Page 3 
 {¶ 4} Defendant appeals the trial court's judgment, assigning four errors for our consideration:
 1. The trial court abused its discretion in refusing to grant the Appellant's motion to withdraw guilty plea.
 2. The trial court abused its discretion by failing to disqualify the prosecuting attorney from these proceeding[s].
 3. The trial court erred in not ruling Prosecutorial misconduct.
 4. Appellant did not have the proper assistance of counsel[.]
 {¶ 5} Appellant's first assignment of error contends that the trial court abused its discretion in denying his motion to withdraw his guilty plea. The general rule is that motions to withdraw guilty pleas prior to sentencing are to be freely and liberally allowed. State v.Peterseim (1980), 68 Ohio App.2d 211, 214, 22 O.O.3d 341,428 N.E.2d 863. However, the right to withdraw a guilty plea prior to sentencing is not absolute, as "[o]ne who enters a guilty plea has no right to withdraw it." State v. Xie (1992), 62 Ohio St.3d 521, 526,584 N.E.2d 715, citing Barker v. United States (C.A.10, 1978), 579 F.2d 1219. The initial burden under Crim.R. 32.1 requires that "[a] defendant attempting to withdraw his plea must articulate a reasonable and legitimate basis for permitting that withdrawal." State v. DeWille, Medina App. No. 2101, 1992 Ohio App. LEXIS 5604. Before ruling on a presentence motion to withdraw a guilty plea, the trial court must hold a hearing to determine whether there is a reasonable and legitimate basis to allow the withdrawal. Xie at 527.
 {¶ 6} On review, "[a]n appellate court is not permitted to perform a de novo review of the trial court's decision with respect to a withdrawal of a guilty plea." State v. Van Dyke, Lorain App. No. 02CA008204, 2003-Ohio-4788, at ¶ 7. Instead, our standard *Page 4 
of review requires us to consider whether the trial court abused its discretion in its decision to grant or deny the motion. Xie at 527. It must be emphasized that abuse of discretion connotes more than a simple error of law or judgment; it implies that the trial court's decision is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.
 {¶ 7} This court has identified a number of factors to be used when determining whether a trial court abused its discretion in denying a motion to withdraw a plea of guilty. These factors include: (1) whether the defendant was represented by highly competent counsel, (2) whether the trial court conducted a full Crim.R. 11 hearing before accepting the plea, (3) whether the trial court conducted a full and impartial hearing on the motion to withdraw the plea, (4) whether the trial court gave full and fair consideration to the request, (5) the prejudice that would be suffered by appellee if the plea is withdrawn, (6) the timeliness of the motion, (7) whether the motion sets out specific reasons for the withdrawal, (8) whether the defendant understood the nature of the charges and the possible penalties, and (9) whether the defendant is possibly not guilty or has a possible defense to the charges. State v.Yander, Franklin App. No. 05AP-38, 2005-Ohio-5538, reversed on other grounds, In re Ohio Crim. Sentencing Statutes Cases, 109 Ohio St.3d 313,2006-Ohio-2109, 847 N.E.2d 1174; Peterseim, supra; State v. Fish (1995),104 Ohio App.3d 236, 661 N.E.2d 788. This list "is not exhaustive, and other factors will appear to trial and appellate courts depending upon the merits of each individual case." Fish at 240. *Page 5 
 {¶ 8} In his initial motion to withdraw the guilty plea filed with the trial court, appellant argued that he had not been given sufficient time to fully discuss the state's plea offer with his counsel before being required to make the decision to accept the offer. In an amended motion, appellant argued as an additional basis that his counsel at that time advised him that he had only a 20 percent chance of success at trial. In the motion hearing held by the trial court and in briefing here, appellant alleges as additional grounds his misunderstanding of the meaning of an Alford plea and the prosecuting attorney's manipulation of his wife.[2]
 {¶ 9} At the hearing held by the trial court, appellant offered his own testimony, as well as the testimony of his wife, Karen. Each testified that appellant was not informed about the plea bargain being offered until March 21, 2006, after jury selection was complete and the court had recessed for lunch, and that appellant was given between five and fifteen minutes to make the decision whether to accept the offer. Initially, appellant testified that he did not understand any of the proceedings, including the court's discussion of Crim.R. 11 requirements. However, upon further examination by the assistant prosecutor and the court, appellant admitted that he did understand the court's discussion of the Crim.R. 11 requirements. Ultimately, appellant stated that the only portion of the proceedings that he had failed to understand was the meaning of the Alford plea.
 {¶ 10} In response, the state offered the testimony of Deborah Murray, the assistant public defender who served as appellant's counsel when the plea agreement *Page 6 
was reached. In addition, assistant prosecutor Daniel Hawkins was called as a witness by the court. Ms. Murray testified that the plea bargain offer was initially made on March 7, 2006, and that she communicated the offer to appellant at that time. Ms. Murray also testified that the offer was reiterated on the morning of March 21, 2006, but that appellant rejected the offer later in the morning. The assistant prosecutor agreed to leave the offer open through lunch.
 {¶ 11} Ms. Murray also testified that she met with appellant while the court was recessed for lunch. She testified that she explained to appellant that an Alford plea is an agreement under which a criminal defendant agrees to plead guilty in order to avoid the consequences of trial. She further testified that she told appellant that even if anAlford plea was entered, this would not change the possible sentence that could be imposed. Ms. Murray also stated that she could not recall telling appellant there was a 20 percent chance of success at trial, and stated that it is not her practice to make such statements regarding probability of success. Finally, Ms. Murray testified that appellant gave no indication that he did not understand the nature of the plea, and stated her belief that appellant did, in fact, understand the nature and consequences of the plea he entered.
 {¶ 12} In denying appellant's motion to withdraw his guilty plea, the trial court specifically concluded that Ms. Murray's testimony was more credible than the testimony of appellant and his wife. The court concluded that Ms. Murray communicated the state's plea offer to appellant on more than one occasion and explained the consequences of accepting that offer, and did explain what an Alford plea was. The court further found that, based on appellant's extensive experience in the criminal justice system, having entered guilty pleas in multiple cases, appellant did enter his plea knowingly, voluntarily, *Page 7 
and intelligently, and that appellant's motion to withdraw his guilty plea was based not on his lack of understanding of the proceedings, but was instead simply a change of heart that could not support his motion to withdraw the plea. See Yander, supra (no sufficient basis to allow withdrawal of guilty plea where defendant simply has a change of heart after pleading guilty, even where change occurs prior to sentencing).
 {¶ 13} The trial court was in the best position to determine the credibility of appellant's claims regarding his understanding of the meaning of the Alford plea he entered, as well as his claims of undue coercion by his counsel and the prosecutor. In addition, the record shows that the trial court specifically considered a number of the factors identified in Yander, supra, before deciding the motion, and gave full consideration to the basis presented by appellant for withdrawal of his guilty plea. Given the record before us, the trial court did not abuse its discretion in finding that appellant failed to articulate a reasonable and legitimate basis to withdraw his guilty plea.
 {¶ 14} The dissent focuses on an issue not raised by appellant — whether the trial court took all of the steps necessary to properly accept an Alford plea, rather than on the issue of whether appellant understood the plea. In this case, it appears that appellant's counsel and the assistant prosecuting attorney agreed that appellant would enter a guilty plea while still maintaining his innocence. The prosecutor stated the factual basis for the charges on the record, including that appellant was alone with the victim at the time the injuries occurred. Appellant's counsel placed appellant's assertion of innocence on the record during the plea hearing, and gave as the reason for accepting the plea appellant's desire to avoid the consequences of trial. *Page 8 
 {¶ 15} Alford and the cases following it have made it clear that guilty pleas accompanied by an assertion of innocence should not be accepted unless there is a factual basis for the plea, and until the court accepting the plea has attempted to resolve the conflict between the waiver of trial rights and the assertion of innocence. State v.Padgett (1990), 67 Ohio App.3d 332, 586 N.E.2d 1194. In this case, the assistant prosecuting attorney informed the trial court of the factual basis for the charges against appellant, and the plea agreement resulted in appellant entering a guilty plea to a lower degree offense than the one with which he was originally charged. Furthermore, the trial court carefully addressed appellant's understanding of the rights appellant was waiving prior to the acceptance of the guilty plea. Consequently, even if appellant had properly raised the trial court's compliance withAlford as an additional assignment of error, the record establishes that the trial court had before it sufficient information to determine that appellant's decision to plead guilty notwithstanding his assertion of innocence was a rational decision, and was therefore made knowingly, voluntarily, and intelligently.
 {¶ 16} Consequently, appellant's first assignment of error is overruled.
 {¶ 17} In his second assignment of error, appellant argues that the trial court abused its discretion when it failed to disqualify the assistant prosecuting attorney from further participation in the proceedings after the assistant prosecutor testified as a witness during the hearing on appellant's motion to withdraw his guilty plea. The record shows that during the hearing, the trial court stated its intention to ask the assistant prosecuting attorney about statements allegedly made to appellant's wife. The trial court offered to have the assistant prosecutor placed under oath, and appellant's counsel accepted that offer after the court began the questioning. Appellant did not raise any objection to the *Page 9 
assistant prosecutor's testimony, or to the assistant prosecutor's continued representation in the case after testifying.
 {¶ 18} Appellant relies on DR 5-102(A) in support of his contention that the trial court should have disqualified the assistant prosecuting attorney.[3] That rule required withdrawal of an attorney if it became "obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client." In contrast, appellee points to DR 5-102(B), which provided that if it became "obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client."
 {¶ 19} In this case, the assistant prosecutor's testimony was not the result of his own decision to testify as a witness, but was rather the result of the trial court's desire to question him regarding aspects of the plea discussions, and appellant's counsel's request to be given the opportunity to cross-examine him. Consequently, the assistant prosecutor's role as a witness was on the court's behalf, rather than on behalf of the state, and DR 5-102(B) would have been the applicable provision. Appellant has not identified any prejudice to the state by the assistant prosecutor's testimony, nor can we discern any such prejudice from our review of the record. Therefore, the assistant prosecutor was not required to withdraw from representation.
 {¶ 20} Moreover, the assistant prosecutor was sworn as a witness only on the request of appellant's counsel. Even assuming that it was error for the trial court to fail to *Page 10 
disqualify the assistant prosecutor when the prosecutor became a witness in the case, appellant invited the error by requesting that the assistant prosecutor be placed under oath so he could be cross-examined. "Under the invited-error doctrine, a party cannot take advantage of an error that the party invited or induced the court to commit." State v.LaMar, 95 Ohio St.3d 181, 206, 2002-Ohio-2128, ¶ 102, 767 N.E.2d 166.
 {¶ 21} Consequently, appellant's second assignment of error is overruled.
 {¶ 22} In his third assignment of error, appellant argues that the assistant prosecutor engaged in prosecutorial misconduct by making statements to appellant's wife regarding the possible sentence that could have resulted if appellant had proceeded to trial and been convicted of the crimes charged. Appellant alleges that the statements were intended to induce appellant's wife into convincing appellant to accept the plea offer.
 {¶ 23} The test for prosecutorial misconduct is whether statements made prejudicially affected substantial rights of the accused. State v.Lott (1990), 51 Ohio St.3d 160, 555 N.E.2d 293. The trial court admonished the assistant prosecutor for speaking to a member of a defendant's family, but found that there was no prejudice to appellant.
 {¶ 24} Appellant's wife testified that she had been in contact with the assistant prosecutor during the course of the case because she was considered a possible witness to the crimes charged. The assistant prosecutor stated that he contacted appellant's wife regarding the possible sentence because she is the infant victim's grandmother. Under these circumstances, we believe the assistant prosecutor contacted appellant's wife because she was a close relative of the victim with whom the prosecutor was required to consult as part of the plea discussions as required by R.C. 2930.06(A), which requires consultation by the prosecutor with the victim to the extent practicable prior to amendment *Page 11 
of an indictment or agreement to a plea bargain, not because he believed appellant's wife would induce appellant into accepting the plea offer. Consequently, we cannot say that the assistant prosecutor's discussions with appellant's wife rise to the level of prosecutorial misconduct.
 {¶ 25} Consequently, appellant's third assignment of error is overruled.
 {¶ 26} In his fourth assignment of error, appellant argues that he did not receive effective assistance of counsel as required by theSixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution. In order to prevail on a claim of ineffective assistance of counsel, appellant must show that his counsel's performance fell below an objective standard of reasonableness, and that he suffered prejudice as a result. Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. The court inStrickland recognized that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Id. at 689. In analyzing claims of ineffective assistance of counsel, courts have applied a two-part test where "[t]he defendant must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) resulting prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." State v. Sapp, 105 Ohio St.3d 104, 115-116,2004-Ohio-7008 at ¶ 76, 822 N.E.2d 1239, 1253.
 {¶ 27} Appellant argues that his trial counsel committed a number of prejudicial errors in her representation, including (1) failing to spend adequate time meeting with appellant prior to the date of trial; (2) failing to adequately explain the ramifications of entering anAlford plea; and (3) telling appellant he had only a 20 percent chance of *Page 12 
success at trial. Appellant's former counsel testified at the hearing on appellant's motion to withdraw his guilty plea regarding each of these issues. Former counsel stated that she met with appellant and discussed the case with him prior to the trial date and obtained discovery from the state. Former counsel also contradicted appellant's claim that she did not explain the meaning of the Alford plea and stated that she did not believe she would have attempted to estimate a percentage chance of success. The trial court was in a position to determine the credibility of the competing witnesses regarding former counsel's representation, and found former counsel's testimony more credible. Given the trial court's determination, we find that appellant's former counsel's representation was not deficient.
 {¶ 28} Consequently, appellant's fourth assignment of error is overruled.
 {¶ 29} Having overruled all of appellant's assignments of error, we affirm the trial court's judgment.
Judgment affirmed.
BROWN, J., concurs. WHITESIDE, J., dissents.
[1] This case highlights the distinction between Alford pleas as originally recognized by the United States Supreme Court, in which a criminal defendant ostensibly enters a "normal" guilty plea, and then at some point prior to the trial court's acceptance of the plea makes an assertion of innocence, and Alford pleas as they frequently appear in practice, in which a plea agreement is reached, and counsel agree that the defendant will place an assertion of innocence on the record as part of the agreement.
[2] Appellant also expanded on the basis argued in his amended motion before the trial court by alleging more generally that his plea was the result of his former counsel's "undue persuasion."
[3] DR 5-102 has been replaced by the adoption of Prof. Cond. R. 3.7 since the hearing at issue in this case.