DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-Appellant Todd McCutcheon appeals his conviction for domestic violence from the Marietta Municipal Court. Appellant argues that insufficient evidence supports his conviction. Because we find that the State presented evidence that, if believed, would convince the average mind of Appellant's guilt beyond a reasonable doubt, we disagree. Appellant also argues that his conviction is against the manifest weight of the evidence. Because we find that the jury did not lose its way and create a manifest miscarriage of justice, we disagree. Accordingly, we affirm the trial court's judgment.
 {¶ 2} The State charged Appellant with one count of domestic violence, in violation of R.C. 2919.25(A). Appellant pled not guilty and the case proceeded to a jury trial.
 {¶ 3} At trial, Deputy Dillon Evans testified that he was dispatched to Appellant's residence after receiving a report of domestic violence. The police cruiser camera and audio equipment recorded the deputy's conversation with Appellant. On the tape, Appellant states: "I hit her, I backhanded her, I shoved her down in the ditch. * * * But I want you to know I'm not going to press any charges. If she does, fine. I know how domestic violence * * * works. Somebody has to go to jail, but I hope it ain't me."
 {¶ 4} Deputy Evans also visited the victim, Nicole Lowers, at her brother's residence. The deputy observed injuries on the victim's body. He photographed the injuries, which included a split lower lip, a swollen eye, and scratches to her legs and arms. The victim refused to provide a written statement because she did not want to press charges. However, she did offer a verbal statement, which the police car camera recorded. Ultimately, Deputy Evans concluded that Appellant should be placed in custody for domestic violence.
 {¶ 5} On cross-examination, Deputy Evans admitted that Appellant was not wearing a shirt when he arrived at the scene. In his investigation, he learned that the victim ripped Appellant's shirt from his body. He also observed small red marks on Appellant's hands. The deputy decided against taking photographs of Appellant's hands because he believed the marks could have come from his job. On re-direct, Deputy Evans stated that he did not observe any marks or scratches on Appellant's back or face.
 {¶ 6} The victim reluctantly testified for the State. According to her testimony, she met Appellant at a bar earlier that evening, where both consumed alcohol. When they arrived home, they began to argue and Appellant left the house by walking away. The victim then chased him and jumped on his back, to prevent him from leaving. During the altercation, she ripped off his shirt. At some point, she fell into a ditch, and was injured. The victim insisted that she did not want Appellant prosecuted.
 {¶ 7} The State produced the videotaped recording of the victim's verbal statement to Deputy Evans in an effort to impeach her testimony. On the tape, the victim states: "* * * he punched me in the face and knocked me into the ditch. * * * and I jump back up and I went to — I don't know if I was to try to defend myself or try to catch him to stop him or — because I didn't want to fight, I didn't want to fight in front of my kid * * * and I ripped his shirt, the front of his shirt, tried to grab a hold of him to calm him down. * * * Anyway, when I grabbed a hold of his shirt, he hit me about four times and knocked me back into the ditch * * *." (Sic.) When advised that Appellant claimed she acted as the primary aggressor by jumping on his back, the victim stated: "No, no, I didn't jump on his back. No, I didn't hit him. I mean, if I'm the aggressor, you can take me to jail, I guess, but I didn't hit him."
 {¶ 8} After observing the tape in court, the victim claimed she was intoxicated that evening and that her statement was not trustworthy. She adamantly insisted that she acted as the primary aggressor that evening. Finally, the victim testified that her brother called the police and that she did not want the police involved.
 {¶ 9} Appellant testified in his own defense. He argued that the victim was angry with him that evening because he went to the bar. When they returned home they argued and he decided to walk away from the fight. As he walked toward his landlord's house, the victim followed him, asked him to stay, and then grabbed his shirt. After victim ripped his shirt off of him, Appellant continued to walk away. The victim then jumped on his back. He struggled to get her off his back and she landed in the ditch. At one point, Appellant testified that he threw the victim into a ditch, but he later testified that he pushed her into the ditch. Eventually, Appellant clarified this discrepancy and stated he pushed the victim into the ditch. After the victim fell into the ditch, Appellant continued to walk toward his landlord's home and the victim left the residence. Appellant asserted that he never knowingly caused, or attempted to cause, physical harm to the victim. Finally, on cross-examination Appellant insisted that he never told the deputy that he hit the victim.
 {¶ 10} The jury deliberated and returned a guilty verdict. The trial court entered a judgment of conviction and sentenced Appellant to 30 days in the county jail, with 27 days suspended, subject to a one-year probation and a $150.00 fine.
 {¶ 11} Appellant appeals, raising the following assignments of error:
 {¶ 12} "I. THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO JUSTIFY A CONVICTION FOR DOMESTIC VIOLENCE. II. IN VIOLATION OF DUE PROCESS, THE GUILTY VERDICT ON DOMESTIC VIOLENCE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 13} In his first assignment of error, Appellant argues that the State failed to proffer sufficient evidence to support his conviction. Specifically, Appellant argues that the evidence shows that the victim initiated the altercation and that he did not intentionally cause the victim physical harm.
 {¶ 14} When reviewing the sufficiency of the evidence, we examine the evidence admitted at trial and determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citing Jackson v. Virginia
(1979), 443 U.S. 307. This test involves a question of law and does not permit us to weigh the evidence. State v. Martin (1983),20 Ohio App.3d 172, 175.
 {¶ 15} R.C. 2919.25(A) provides: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." R.C.2901.22(B) states, "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." A jury may infer a defendant's mental state from the surrounding facts and circumstances. State v. Logan (1979), 60 Ohio St.2d 126, 131.
 {¶ 16} At the outset, we note that Appellant argues, in part, that there is insufficient evidence to support his conviction because testimony showed that the victim acted as the primary aggressor. This argument is relevant to whether Appellant proved he acted in self-defense. However, Appellant failed to request a jury instruction on self-defense. Therefore, the jury could not have returned a not guilty verdict based on self-defense. Appellant cannot now void the jury's verdict by arguing that he acted in self-defense. Appellant needed to assert that defense at trial and we decline to address his argument for the first time on appeal.
 {¶ 17} Appellant also argues that there is insufficient evidence to support a finding that he knowingly caused physical harm to the victim. We disagree. The State presented: (1) photographic evidence of the victim's injuries and (2) a recording of Appellant admitting he hit the victim. This evidence is sufficient to support the conviction. While it is true that the victim recanted her verbal statement to the police, the State effectively impeached her testimony. It is within the province of the jury to determine which testimony is credible and we cannot disturb that finding. Moreover, the State presented sufficient facts on which the jury could conclude that Appellant acted knowingly. Accordingly, we overrule Appellant's first assignment of error.
 {¶ 18} In his second assignment of error, Appellant argues that his conviction is against the manifest weight of the evidence. Specifically, Appellant argues that credible evidence proves that the victim acted as the primary aggressor and that he did not knowingly cause physical injury to the victim.
 {¶ 19} When determining the weight of the evidence, a reviewing court sits as a "thirteenth juror" and determines whether the greater amount of credible evidence supports the verdict. State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52. To this end, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. Id., citing State v. Martin (1983), 20 Ohio App.3d 172,175. If the fact finder clearly lost its way, the reviewing court must reverse the conviction and order a new trial. Id. However, if the record contains some substantial evidence, upon which a reasonable fact finder could conclude that all the essential elements of the offense were proven beyond a reasonable doubt, the conviction must be affirmed. State v.Getsy, 84 Ohio St.3d 180, 193-194, 1998-Ohio-533; State v. Eley (1978),56 Ohio St.2d 169, syllabus. While a manifest weight argument permits an appellate court to weigh the evidence, a presumption exists that the jury is best able to judge witness credibility. Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77, 80.
 {¶ 20} Again, we decline to address Appellant's argument that his conviction is not supported by the manifest weight of the evidence because he acted in self-defense, as he failed to raise that issue below. However, we will address Appellant's argument that the manifest weight of the evidence proves that he did not act knowingly.
 {¶ 21} Appellant maintains that the greater amount of credible evidence proves that the victim initiated the altercation and that she sustained her injuries when he tried to remove her from his back. According to Appellant, the victim's trial testimony and his own testimony support this theory. Appellant argues that the victim's verbal statement to the police is not credible because she was intoxicated that evening.
 {¶ 22} We disagree and find that the jury did not lose its way and create a manifest miscarriage of justice. The State presented substantial evidence to support the conviction: (1) photographic evidence of the victim's injuries and (2) Appellant's recorded statement in which he admits to hitting the victim.
 {¶ 23} Moreover, the jury was free to disregard Appellant's own self-serving testimony. In fact, Appellant testified that he never told Deputy Evans that he hit the victim. However, the cruiser videotape clearly reflects otherwise. This fact, alone, gives the jury reason to find Appellant's testimony non-credible.
 {¶ 24} Finally, we find that the evidence supports the jury's finding that Appellant acted knowingly. The act of repeatedly punching or hitting a victim in the face will obviously result in physical harm to the victim. The surrounding facts and circumstances of this case support the finding that Appellant acted knowingly.
 {¶ 25} Because the State presented substantial evidence to support the verdict, we find that the jury did not lose its way and create a manifest miscarriage of justice. Accordingly, we overrule Appellant's second assignment of error and affirm the trial court's judgment.
Judgment affirmed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that costs herein be taxed to the appellant.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Marietta Municipal Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. Harsha, J.: Concur in Judgment Only.