[Cite as *State v. Michael* , 2010-Ohio-5296.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 09CA887 |
| | : | |
| vs. | : | **Released: October 26, 2010** |
| | : | |
| ELIZABETH MICHAEL, | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Lisa Rothwell, West Union, Ohio, for Defendant-Appellant.

Aaron E. Haslam, Adams County Prosecuting Attorney, Kris D. Blanton, Adams County Assistant Prosecuting Attorney, West Union, Ohio, for Plaintiff-Appellee.

_____

McFarland, P.J.:

{¶1}     Defendant-Appellant, Elizabeth Michael, appeals the decision of the Adams County Court of Common Pleas finding her guilty of arson and aggravated arson.  Michael states there was error below in that 1) she did not voluntarily, knowingly and intelligently waive her Miranda rights; 2) her statement to investigators admitting her guilt was not made voluntarily knowingly and intelligently; 3) she had ineffective assistance of counsel because her trial counsel failed to object to the admission of her Miranda waiver form and her statement admitting guilt; and 4) the jury's verdict was

against the manifest weight of the evidence. We disagree. After a complete review of the trial record, we find that none of Michael's assignments of error are warranted and affirm the decision of the court below.

## I. Facts

{¶2}    In December 2008, the West Union Village Police Department was called to the scene of an apartment building fire. The fire caused extensive damage to the multi-unit building. Subsequent investigation showed that the fire had originated in the apartment of tenant Anthony Ruben Baca. Appellant Elizabeth Michael and her husband had been residing with Baca before the fire.

{¶3}    Investigators asked Michael and her husband to come in for questioning about the fire. Once at the station, Officer Tim Sanderson presented Michael with a Miranda rights waiver form. Sanderson went over the contents of the form with Michael, Michael indicated that she understood each of her rights, and she then signed the waiver. Michael was then interviewed by Fire Marshals Robert Dunn and Trace Lawless. During the interview, Michael initially denied any knowledge of the fire. But within a relatively short period of time, she verbally admitted to setting the fire. She then wrote out a statement to that effect. She stated that on the day of the

fire, she discovered that Baca had stolen from her and her husband.  She said she set the fire in Baca's apartment in retaliation.

{¶4}     Michael was indicted on multiple counts of arson.  In a pretrial motion, she moved to suppress both the Miranda waiver form and the self-incriminating statements she had made to Dunn and Lawless.  After an evidentiary hearing, the trial court denied her motion to suppress and the matter proceeded to trial.  The jury subsequently found her guilty of aggravated arson, under R.C. 2909.02 (A)(2), guilty of arson, under R.C. 2909.03 (A)(1), and not guilty of aggravated arson under R.C. 2909.02 (A)(1).  The trial court sentenced her to five years in prison.  Following sentencing, Michael timely filed the current appeal.

## II. Assignments of Error

First Assignment of Error

> THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS AS APPELLANT DID NOT VOLUNTARILY, KNOWINGLY AND INTELLIGENTLY WAIVE HER MIRANDA RIGHTS.

Second Assignment of Error

> THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS AS APPELLANT'S STATEMENTS WERE NOT MADE VOLUNTARILY, KNOWINGLY AND INTELLIGENTLY.

Third Assignment of Error

> TRIAL COUNSEL WAS INEFFECTIVE IN VIOLATION OF THE SIXTH AMENDMENT FOR FAILURE TO OBJECT TO THE TRIAL COURT'S ADMISSION OF THE MIRANDA WAIVER AND WRITTEN STATEMENT OF THE APPELLANT.

Fourth Assignment of Error

> THE JURY VERDICT OF GUILTY ON THE AGGRAVATED ARSON IN VIOLATION OF OHIO REVISED CODE § 2909.02 (A)(2) AND ARSON IN VIOLATION OF OHIO REVISED CODE § 2909.03 (A)(1), WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE DENYING APPELLANT DUE PROCESS OF LAW.

### III. First and Second Assignments of Error

{¶5}    As Michael's first and second assignments of error both argue that the trial court improperly denied her motion to suppress, we address them together.  In her first assignment of error she states the trial court improperly denied her motion to suppress because she did not voluntarily, knowingly and intelligently waive her Miranda rights.  In her second assignment of error she states the trial court improperly denied her motion to suppress because her statements incriminating herself were also not made voluntarily, knowingly and intelligently.

{¶6}    Appellate review of a motion to suppress presents a mixed question of law and fact.  *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶8.  In a motion to suppress, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve

questions of fact and evaluate witness credibility. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972, citing *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583. Accordingly, in our review, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Guysinger* (1993), 86 Ohio App.3d 592, 594, 621 N.E.2d 726. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. *State v. Klein* (1991), 73 Ohio App.3d 486, 488, 597 N.E.2d 1141.

{¶7}     During the suppression hearing, Officer Tim Sanderson, the officer who informed Michael of her Miranda rights, testified to the following: Michael voluntarily came to the police station; because Michael did not have a way to get to the station, a deputy drove to where she was staying and brought her to the interview; at no time was Michael handcuffed or restrained in any manner; she was not placed under arrest; before going over the waiver form with her, Sanderson asked her if she could read, if she was taking prescription medication, or if she was under the influence of drugs or alcohol; she appeared to understand everything he said and she did not appear to be under the influence of drugs or alcohol; Sanderson read each right listed on the Miranda waiver form to Michael; after he read each

right, he asked her if she understood the right, and if she did, to place her initials beside it; Michael initialed each right and also verbally told Sanderson that she understood each right; she also signed the waiver itself, saying that she understood each of the rights and that she waived those rights and was willing to make a statement; again, she verbally indicated that she understood those rights and the function of the waiver form; she signed the form at about 1 a.m.; Michael had only been in the squad room for five or ten minutes before she executed the waiver form.

{¶8}    In her brief, Michael presents very little support as to why she believes she did not voluntarily, knowingly and intelligently waive her Miranda rights.  She states that there is nothing in the record to indicate that the Miranda form was read to her and nothing to indicate that Officer Sanderson believed that she understood the waiver.  Those assertions are flatly contradicted by the testimony of Sanderson related above.  It is true that Sanderson, himself, did not discuss the allegations of arson with her, but it is also clear that she knew why she was being questioned: at the beginning of her interview, which took place immediately after she had signed the Miranda waiver form, she stated that she knew she was there because of the fire, and because the authorities thought she and her husband might be involved.  Further, Michael acknowledged that she initialed each Miranda

right and executed the waiver form. But our analysis of whether a defendant has voluntarily, knowingly and intelligently waived her Miranda rights does not end simply at whether she has been informed of those rights.

{¶9} The Court has concluded that even if Miranda warnings are required and given, a defendant's statements may be deemed involuntarily and, thus, be subject to exclusion. *State v. Kelly*, 2nd Dist. No. 2004-CA-20, 2005-Ohio-305, at ¶11. "The test for voluntariness under a Fifth Amendment analysis is whether or not the accused's statement was the product of police overreaching." *State v. Finley* (June 19, 1998), 2nd Dist. No. 96-CA-30, at *8. "A suspect's decision to waive his Fifth Amendment privilege is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct." *State v. Dailey* (1990), 53 Ohio St.3d 88, 91, 559 N.E.2d 459. "In determining whether a suspect's statement was made voluntarily, a court should consider the totality of the circumstances. These circumstances include 'the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.'" *State v. Sneed*, 166 Ohio App.3d 492, 2006-Ohio-1749,

851 N.E.2d 532, at ¶31, quoting *State v. Edwards* (1976), 49 Ohio St.2d 31,

3 O.O.3d 18, 358 N.E.2d 1051.

{¶10}     As previously stated, during her interview with Fire

Marshals Robert Dunn and Trace Lawless, Michael at first denied

involvement with the fire, but soon admitted that she was responsible.  She

also drafted a written statement admitting her guilt.  The suppression hearing

transcript shows that the trial court engaged in a thorough analysis as to

whether those statements were made knowingly, intelligently and

voluntarily.  The trial court found the following:

{¶11}     Michael was advised of the allegations against her; she was

apprised of her Miranda rights and she waived those rights; though only 19

years old and though her education was limited to completing the eighth

grade, she communicates and writes very well; she was not under the

influence of any alcohol or drugs; she voluntarily came to the police station

to give her statement; the interview lasted, at most, 45 minutes; she was not

subjected to physical or mental deprivation and there were no allegations of

mistreatment; the intensity of the questioning was "at best de minimus, if

not, void of intensity."

{¶12}     The court also noted that Michael had testified about a

statement Lawless allegedly made to her during her interview.  Michael

stated that Lawless told her that if she did not make a statement, they would be there all night, but if she did make a statement she could go home. Investigator Dunn denied that Lawless had made such a statement to Michael.[1] Taking into consideration its previous findings regarding the short duration of the interview, the lack of intensity, and Michael's competency, the trial court stated the following about the issue: "[T]he Court does not find that the inducement of hey, we're going to, either you give a statement and tell us what happened, or we are going to be here all night or a while. The Court does not find that, that would be something that would have been in violation."

{¶13}    We fully agree with the trial court's thorough analysis of the facts and circumstances surrounding Michael's interview.  After a complete review of the suppression hearing, and considering the totality of the circumstances, we find the evidence overwhelmingly shows that Michael voluntarily, knowingly and intelligently waived her Miranda rights and that she voluntarily, knowingly and intelligently stated that she was responsible for the fire.  Accordingly, we overrule her first and second assignments of error.

---

[1] Lawless did not testify at the suppression hearing.

## IV. Third Assignment of Error

{¶14}   In her third assignment of error, Michael argues that she had ineffective assistance of counsel because her trial counsel failed to object when the Miranda waiver form and her written statement admitting her guilt were entered into the record during the suppression hearing.

{¶15}   In order to establish ineffective assistance of counsel, an appellant must show that counsel's representation was both deficient and prejudicial. *In re Sturm*, 4th Dist. No. 05CA35, 2006-Ohio-7101, at ¶77; *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052. Deficient representation means counsel's performance was below an objective standard of reasonableness. Id.  To show prejudice, an appellant must show it is reasonably probable that, except for the errors of his counsel, the proceeding's outcome would have been different.  Id.

{¶16}   Michael argues that her trial counsel should have objected to the admission of her Miranda waiver form and her written statement, but she does not state the basis upon which the objection should have been made. As the State points out in its brief, this assignment of error seemingly refers solely to the proffer at the suppression hearing.  If it is Michael's contention that the documents were not properly authenticated, she presents no evidence upon which her trial counsel could have supported that claim.  She

admitted that the proffered form had her initials and her signature on it. Similarly, she admitted that she drafted and signed the statement admitting her guilt. And she did not allege that the either statement had been altered in any way. Neither did she allege that either form was anything other than what it was purported to be.

{¶17}   Further, it is undisputed that Michael's trial counsel properly filed a motion to suppress the documents, properly argued against their inclusion during the suppression hearing, and properly renewed the objection at all relevant times. The trial court acknowledged this fact when the exhibits were admitted during trial:

{¶18}   "Counsel the Court will note, and just for clarification of the record, from the time of the motion to suppress throughout this entire proceeding of this trial, that the, there have been timely objections noted by defense counsel in regard to State's Exhibits 8, 8 and 9 * * * but the Court will also admit State's Exhibit 8, 8 and 9 over the objections of defense counsel."[2]

{¶19}   Accordingly, we find no basis for Michael's claim that she was denied effective assistance of counsel and we overrule her third assignment of error.

---

[2] State's Exhibit 8 is the Miranda waver form, Exhibit 9, Michael's written confession.

V. Fourth Assignment of Error

{¶20}    In her fourth assignment of error, Michael argues that the jury's verdict was against the manifest weight of the evidence.  "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different."  *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.  Sufficiency tests the adequacy of the evidence, while weight tests "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other[.]"  *State v. Sudderth*, 4th Dist. No. 07CA38, 2008-Ohio-5115, at ¶27, quoting *Thompkins* at 387.

{¶21}    "Even when sufficient evidence supports a verdict, we may conclude that the verdict is against the manifest weight of the evidence, because the test under the manifest weight standard is much broader than that for sufficiency of the evidence."  *State v. Smith*, 4th Dist. No. 06CA7, 2007-Ohio-502 at ¶41.  When determining whether a criminal conviction is against the manifest weight of the evidence, we "will not reverse a conviction where there is substantial evidence upon which the [trier of fact] could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt."  *State v. Eskridge* (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, paragraph two of the syllabus.  See, also, *Smith* at ¶41.

We "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted." *Smith* at ¶41, citing *State v. Garrow* (1995), 103 Ohio App.3d 368, 370-371, 659 N.E.2d 814; *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. However, "[o]n the trial of a case, * * * the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *DeHass* at paragraph one of the syllabus.

{¶22}  For the following reasons, we find there was ample evidence for the jury to find Michael guilty of arson and aggravated arson. First, and most obviously, there is her confession. During trial, Michael testified in her own defense and claimed that she did not set the fire and that she confessed only in order to protect her husband. But Dunn and Lawless, her interviewers, testified that she had information about the fire that only the perpetrator would know. Though they told her the fire had multiple origins, they did not tell where the fire had originated. Both Dunn and Lawless testified that Michael told them two specific places where she set the fire - in the oven and in a box in the living room. And this was consistent with the

evidence they found at the scene.  Michael testified otherwise.  She stated that they told her exactly where the fire had started.  But Lawless stated that it was his standard procedure not to give such information to suspects.  "I want them to tell me that, that way I know if they're telling the truth or not."

{¶23}   The jury also heard other testimony that could reasonably be construed as implicating Michael.  Michael had been living in the apartment immediately before the fire was set.  She admitted that she was angry with the apartment's tenant, Ruben Baca, for allegedly stealing her personal property earlier that day.  She admitted that she left the apartment immediately before the fire started - in fact, she was close enough to hear the apartment fire alarm going off.  And she admitted that she removed all of her property from the apartment and was leaving for good immediately before the fire took place.

{¶24}   To the extent that Michael's testimony differs from that of other witnesses, such as Dunn and Lawless, such determinations of credibility are primarily for the trier of fact.  This is particularly true in the present matter, where Michael's testimony flatly contradicts that of Dunn and Lawless on such vital issues as to whether or not Michael already knew the specific origins of the fire and whether or not she was told that she could

go home if she confessed - a claim that both Dunn and Lawless vehemently deny.

{¶25}   Accordingly, after a complete examination of the record below, we find that there was substantial evidence for the jury's decision and that the jury could have reasonably concluded that all the elements of arson and aggravated arson were proven beyond a reasonable doubt.  As such, we overrule Michael's fourth and final assignment of error.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Harsha, J. and Abele, J.: Concur in Judgment and Opinion.

For the Court,

BY: _____
Matthew W. McFarland
Presiding Judge

## **NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**